32 F.3d 475
 Robert WORKMAN; Judy Workman, Plaintiffs-Appellees and
Cross-Appellants,
v.
Ed JORDAN, Sheriff, in his individual capacity; Ed Jordan,
Sheriff, in his official capacity; Rick Dill, Undersheriff,
in his individual capacity; Rick Dill, Undersheriff, in his
official capacity, Defendants-Appellants and Cross-Appellees,
Michael Miller, Captain, in his official capacity; David
Worden, in his individual capacity; David Worden, in his
official capacity; Weld County by and through the Board of
County Commissioners of the County of Weld, Defendants.
 Nos. 93-1138, 93-1178.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 16, 1994.
Rehearing Denied Oct. 11, 1994.
 
 Richard A. Stubbs (Marc F. Colin with him on the briefs) of Bruno, Bruno & Colin, P.C., Denver, CO, for plaintiffs-appellees and cross-appellants.
 Cathy H. Greer of Hall & Evans (Malcolm S. Mead of Hall & Evans; Christina M. Habas of Watson, Nathan & Bremer, P.C.), Denver, CO, for defendants-appellants and cross-appellees.
 Before BRORBY and McWILLIAMS, Circuit Judges, and BROWN,* District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 The matter presented to this court on appeal is whether Sheriff Ed Jordan and Undersheriff Rick Dill should be granted qualified immunity against claims of due process and First Amendment violations. Sheriff Jordan and Undersheriff Dill appeal the district court's denial of their request for qualified immunity against the due process claims. Robert Workman, the plaintiff, cross-appeals the district court's dismissal of his First Amendment claim. We reverse in part and affirm in part.
 
 BACKGROUND
 
 2
 We assume the following facts as alleged by the plaintiff are true. Robert Workman is a captain at the Weld County, Colorado, Sheriff's Department. In October 1989, Undersheriff Rick Dill served Captain Workman with a "Notice of Internal Investigation" after a female employee mentioned to another captain in the Sheriff's Department that Captain Workman made inappropriate comments to her. This notice advised Captain Workman he was being investigated for an allegation "if substantiated, may constitute sexual harassment." Specific allegations were not included in the notice.
 
 
 3
 Undersheriff Dill directed an outside investigator, a member of the Greeley Police Department, to gather facts relating to Captain Workman's alleged sexual harassment. The investigator questioned at least two female employees, as well as Captain Workman.
 
 
 4
 After the investigation produced evidence of harassment,[1] Sheriff Jordan and Undersheriff Dill notified Captain Workman of a hearing at which he would be required to respond to accusations against him and to the recommendation of his termination. Captain Workman attended the pretermination hearing, which was conducted by Undersheriff Dill and Sheriff Jordan. After reviewing the results of the investigation with Captain Workman, Sheriff Jordan terminated Captain Workman's employment. The Sheriff then sent Captain Workman a letter of termination explaining the reasons for the termination and advising Captain Workman of the available grievance procedure.
 
 
 5
 Captain Workman appealed his termination through the Weld County grievance procedure and was granted a posttermination hearing. This hearing was conducted by an impartial Hearing Officer, and Captain Workman was represented by an attorney. The attorney presented evidence on Captain Workman's behalf, made arguments, and examined and cross-examined witnesses.
 
 
 6
 The Hearing Officer issued a seven-page "Findings of Fact, Conclusions and Decision." The Hearing Officer concluded "[s]ome of Captain Workman's comments were vulgar, sexist, inconsiderate and inappropriate in the workplace"; however, his "actions did not rise to the level of sexual harassment by any definition available to the Hearing Officer." The Hearing Officer reversed the termination and granted reinstatement with full back pay.
 
 
 7
 After Captain Workman returned to work, Undersheriff Dill and Sheriff Jordan placed a letter of reprimand in Captain Workman's personnel file along with a "re-entry plan," the letter of termination, and a poor evaluation. When Captain Workman later applied for a training session with the Federal Bureau of Investigation, he was denied admittance. The Federal Bureau of Investigation, after reading Captain Workman's personnel file, banned him from participating in the educational program.
 
 
 8
 In November of 1990, Captain Workman sued Weld County, its sheriff, undersheriff, and other county employees for deprivation of constitutional rights pursuant to 42 U.S.C. Sec. 1983. Captain Workman asserted deprivation of property and liberty interests without due process of law and alleged a violation of his First Amendment right to free speech. Captain Workman and his wife also brought state claims against the defendants. Undersheriff Dill and Sheriff Jordan were sued in their individual and official capacities.
 
 
 9
 Sheriff Jordan and Undersheriff Dill moved to dismiss the federal claims against them on the grounds of qualified immunity. The district court initially reserved ruling on these motions to dismiss. On appeal of the district court's decision to postpone ruling on the motions to dismiss, this court directed the district court to rule on the qualified immunity defenses. Workman v. Jordan, 958 F.2d 332 (10th Cir.1992). On remand, the district court held a hearing to evaluate the motions to dismiss. The district court denied the motions with respect to the due process claims but granted the motion to dismiss Captain Workman's First Amendment claim.[2] The district court entered a final judgment on the First Amendment claim pursuant to Fed.R.Civ.P. 54(b).
 
 
 10
 Sheriff Jordan and Undersheriff Dill appeal the district court's denial of their motions to dismiss. Captain Workman cross-appeals the district court's dismissal of his First Amendment claim against Undersheriff Dill and Sheriff Jordan.
 
 JURISDICTION
 
 11
 This court has jurisdiction pursuant to the collateral order doctrine to review the district court's denial of the qualified immunity motions to dismiss. 28 U.S.C. Sec. 1291; Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 644 (10th Cir.1988) (citing Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985)). The district court entered a final judgment pursuant to Fed.R.Civ.P. 54(b) on Captain Workman's First Amendment claim; therefore, we also have jurisdiction over Captain Workman's cross-appeal. 28 U.S.C. Sec. 1291; see Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980) (district court must determine it is dealing with a "final judgment").
 
 
 12
 We review de novo the district court's denial of qualified immunity. Bella v. Chamberlain, 24 F.3d 1251, 1254 (10th Cir.1994); Powell v. Gallentine, 992 F.2d 1088, 1090 (10th Cir.1993).
 
 QUALIFIED IMMUNITY
 
 13
 Qualified immunity protects public officials from individual liability in a Sec. 1983 action unless the officials violated "clearly established ... constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once a defendant to a Sec. 1983 action raises a qualified immunity defense, the burden shifts to the plaintiff to show both facts and law to establish that the defendant is not entitled to a qualified immunity. Dixon v. Richer, 922 F.2d 1456, 1460 (10th Cir.1991). The plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." Pueblo Neighborhood, 847 F.2d at 646. If the plaintiff meets this burden, then the normal burden of the movant for a motion to dismiss falls again upon the defendant. See id.
 
 
 14
 Since Sheriff Jordan and Undersheriff Dill have raised the defense of qualified immunity, our analysis will focus on whether Captain Workman has met his burden of showing Sheriff Jordan and Undersheriff Dill violated a clearly established federal right. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The three federal rights involved in this case are deprivation of a property right without the due process of law, deprivation of a liberty right without the due process of law, and violation of Captain Workman's First Amendment right to free speech. After examining each alleged constitutional violation separately, we conclude Captain Workman has failed to show Sheriff Jordan and Undersheriff Dill violated a clearly established federal constitutional right.
 
 A.
 DEPRIVATION OF A PROPERTY INTEREST
 
 15
 Captain Workman asserts that Sheriff Jordan and Undersheriff Dill deprived him of a property interest without the procedural protections of the Due Process Clause. Captain Workman claims his property interest is his continued employment with the Sheriff's Department. Weld County, Colorado, is a home rule county and the applicable county employee policy provides employment can only be terminated "for cause." Sheriff Jordan and Undersheriff Dill concede that Captain Workman does have a state-defined property interest in continued employment with the Sheriff's Department. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (citing Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708-10, 33 L.Ed.2d 548 (1972)).
 
 
 16
 Although Captain Workman has a property interest in continued public employment, we fail to find a deprivation of that property interest. Because a procedurally adequate posttermination hearing actually resulted in Captain Workman's reinstatement, together with back pay for the temporary deprivation of his employment, he cannot now state claim under Sec. 1983 for loss of a constitutionally protected property interest in employment. Our decision in Archuleta v. Colorado Dep't of Institutions, 936 F.2d 483 (10th Cir.1991), controls. In Archuleta, a public employee was terminated without cause but was later reinstated with back pay by the state personnel board. Id. at 489. When the employee claimed a Sec. 1983 violation of her substantive due process rights to continued employment, we held "the procedure required by the Due Process Clause served its purpose--it protected the plaintiff against arbitrary state action by restoring to her the property that was taken." Id. at 491. Similarly, the restoration of Captain Workman's job leaves us without a reason to test the propriety of the initial discharge.[3]
 
 
 17
 Captain Workman alleges a long list of procedural errors during his investigation and pretermination hearing, but the fact of his reinstatement remains. "The categories of substance and procedure are distinct.... 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." Loudermill, 470 U.S. at 541, 105 S.Ct. at 1493. Captain Workman's alleged procedural errors do not enlarge his property rights.
 
 
 18
 Captain Workman also contends the posttermination hearing was inadequate because Sheriff Jordan and Undersheriff Dill would not comply with his requests for documents and because they encouraged witnesses not to participate in the hearing. He further argues the Hearing Officer's lack of authority to enforce subpoenas, rule on motions in limine, or grant prehearing motions to dismiss marred the hearing. Again, we find it difficult to evaluate any grievance procedure as inadequate when the employee was reinstated and given full back pay.[4]
 
 
 19
 On Captain Workman's allegations, he has not shown a violation of a clearly established constitutional right. A "full posttermination hearing" is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses. See Melton v. City of Oklahoma City, 928 F.2d 920, 939 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991); Prebble v. Brodrick, 535 F.2d 605, 616 (10th Cir.1976). The lack of subpoena power available to the plaintiff or the unavailability of some witnesses does not, under the facts of this case, create unconstitutional process. See Prebble, 535 F.2d at 615-16. Captain Workman's claim of unlawful deprivation of a property interest fails to meet his burden of showing a violation of clearly established law.
 
 
 20
 When a procedure produces full protection, we need not examine the procedure for error. We thus reverse the district court's denial of the motion to dismiss this claim.
 
 B.
 DEPRIVATION OF LIBERTY INTEREST
 
 21
 Captain Workman also claims he has been deprived of his liberty interest without due process of law. His liberty claim is based on damage to his reputation due to allegedly stigmatizing documents placed in his personnel file by Sheriff Jordan and Undersheriff Dill after his reinstatement. The documents were the letter of reprimand, the termination letter, and the poor job evaluation. The district court denied Sheriff Jordan and Undersheriff Dill qualified immunity against Captain Workman's assertion that they violated his right to due process associated with the deprivation of a liberty interest.
 
 
 22
 Once a liberty interest is implicated, the due process protections of the Fourteenth Amendment are innervated and Captain Workman must show he was not afforded an adequate name-clearing hearing. See Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1558 (10th Cir.1993). However, Captain Workman must first show a liberty interest exists and then that the liberty interest was infringed upon.
 
 
 23
 Captain Workman does have a liberty interest in his good name and reputation as it affects his protected property interest in continued employment. Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); McGhee v. Draper, 639 F.2d 639, 643 (10th Cir.1981). However, Captain Workman must show how the government infringed upon this liberty interest. First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Board of Regents v. Roth, 408 U.S. at 573, 92 S.Ct. at 2707. Second, the statements must be false. Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); Flanagan v. Munger, 890 F.2d 1557, 1571-72 (10th Cir.1989); Wulf v. City of Wichita, 883 F.2d 842, 869 (10th Cir.1989). Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. Paul, 424 U.S. at 710, 96 S.Ct. at 1165; Sullivan v. Stark, 808 F.2d 737, 739 (10th Cir.1987). And fourth, the statements must be published. Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest. See, e.g., Melton v. City of Oklahoma City, 928 F.2d 920 (en banc) (trial court erred in instructing jury to find either stigmatization or loss of employment opportunities), cert. denied, --- U.S. ----, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991).
 
 
 24
 Captain Workman has not established a colorable showing of falsity. His primary contention is that the letter of reprimand, the performance evaluation, and the letter of termination include the allegations from the two female employees. These allegations, he contends, were rejected by the Hearing Officer. This contention misconstrues the documents and the Hearing Officer's decision.
 
 
 25
 The Hearing Officer determined the evidence from the independent investigation was accurate. The Hearing Officer concluded, however, the evidence did not amount to sexual harassment or misconduct sufficient to justify immediate termination. The documents in Captain Workman's personnel file do not contradict this conclusion. The letter of reprimand in fact quotes the Hearing Officer's decision. The documents repeat the evidence of the investigation. Captain Workman has not denied the evidence disclosed by the investigation, nor has he offered any other explanation of the documents falsity. We find the reprinting of the investigator's findings does not establish falsity. Cf. Melton, 928 F.2d at 928 (repetition of a third party's allegations is not a false statement).
 
 
 26
 We recognize one inconsistency between the documents and the Hearing Officer's decision. The letter of reprimand states:
 
 
 27
 [Captain Workman's] behavior is contrary to supervisory responsibility set forth in standard 02.B.001 Command and Direction and the Weld County Personnel Manual, page 14, F, Deliberate, offensive language or conduct toward the public or fellow employees.
 
 The Hearing Officer's Decision states:
 
 28
 Given the rather common practice of telling jokes involving sexual innuendos, the use of terms such as "bitch" or "bimbo" or other vulgar language within the agency and with no effort to halt such activity, the actions of Captain Workman could not be considered deliberate, offensive language or conduct toward the public or fellow employees, which would warrant termination.
 
 
 29
 Finding one inaccurate statement in a personnel document, we turn to whether the statement is shown to harm present employment opportunities. See Jensen, 998 F.2d at 1558. Captain Workman contends the defamatory statements in his file caused the FBI to ban him from their educational program, thereby destroying the possibility of other jobs in law enforcement administration. However, Captain Workman has not lost his present position. See Melton, 928 F.2d at 927 n. 11 (employee need not prove actual denial of a job opportunity if the employee can prove termination based on published false charge). His loss of future positions are too speculative. "[D]amage to 'prospective employment opportunities' is too intangible to constitute a deprivation of a liberty ... interest." Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269 (10th Cir.1989); Jensen, 998 F.2d at 1559. Therefore, we find Captain Workman has not shown lost employment opportunities.
 
 
 30
 Based on our review of Captain Workman's allegations, we are unable to find a sufficient showing of false stigmatizing statements entangled with his interest in employment. We need not inquire whether the posttermination hearing afforded procedural protections of his liberty interest. Since Captain Workman was not deprived a liberty interest, due process does not require an adequate name-clearing hearing. We thus reverse the district court's denial of the motion to dismiss this claim.
 
 C.
 FIRST AMENDMENT VIOLATION
 
 31
 Captain Workman's claim of a First Amendment violation has two components. He contends Sheriff Jordan and Undersheriff Dill retaliated against him (1) for testifying at a Weld County grievance board hearing on behalf of a coworker who had been demoted and (2) for testifying at his own posttermination hearing. The district court dismissed this claim by determining the speech at issue is not a matter of public concern under established law. Captain Workman appeals this ruling in his cross-appeal.
 
 
 32
 Captain Workman avers the first incident of retaliation was in response to his testimony at a coworker's grievance hearing. Sheriff Jordan and Undersheriff Dill retaliated by imposing a poor employment evaluation within twenty-four hours of his testimony and without notice. This first claim of retaliation is barred by the statute of limitations. The poor evaluation was given to Captain Workman in July of 1987, and this suit was filed in November of 1990.
 
 
 33
 Congress provided no statute of limitations for actions under 42 U.S.C. Sec. 1983. However, it is well established that state limitations periods, particularly personal injury limitation periods, are the primary guide for determining time limitations on civil rights actions. See Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Therefore, Colorado's two-year limitations period applies to this claim. Colo.Rev.Stat. Sec. 13-80-102 (1987).[5] Section 1983 claims accrue when the plaintiff knows or has reason to know of the injury that is the basis of the action. Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir.1994) (quoting Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir.1991)), petition for cert. filed May 9, 1994 (S.Ct. No. 93-9079). The alleged retaliatory act occurred more than three years before the suit was filed. Captain Workman does not allege any facts or doctrine that would extend the period of filing. Cf. Hunt, 17 F.3d at 1266 (declining to decide of doctrine of continuing violations applies to Sec. 1983 actions). His claim of retaliation against his right to testify at the coworker's hearing is therefore time barred.
 
 
 34
 Captain Workman avers the second incident of retaliation was in response to his successful appeal of his termination. He claims Sheriff Jordan and Undersheriff Dill retaliated against him for testifying at his termination appeal. The retaliatory act, according to Captain Workman, was the letter of reprimand and the low performance evaluation.
 
 
 35
 To proceed with his First Amendment claim, Captain Workman must show the testimony he gave at his own grievance proceeding "touches upon a matter of public concern." Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); Powell v. Gallentine, 992 F.2d at 1090. Captain Workman contends some of his testimony disclosed the Sheriff's Department's tolerance of a sexist environment, and therefore, the speech touched upon a matter of public concern. A sexist atmosphere in the Sheriff's Department is a matter of concern for the community; however, the Supreme Court in Connick explained speech relating to internal personnel disputes is not regarded as a matter of public concern. 461 U.S. at 147-48, 103 S.Ct. at 1690-91.
 
 
 36
 To determine if the speech related only to internal personnel matters and not to the discharge of governmental responsibilities, the court must consider the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. at 1690. The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances or to address a broader public purpose. Patrick v. Miller, 953 F.2d 1240, 1248 (10th Cir.1992); Conaway v. Smith, 853 F.2d 789, 796 (10th Cir.1988). "In drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, we have looked to the subjective intent of the speaker." Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir.1990).
 
 
 37
 Captain Workman's testimony, at his posttermination hearing, was clearly limited to his termination grievance and was not calculated to address concerns of the public. He spoke of the department's tolerance of a sexist environment only to argue to the factfinder that his behavior was not anomalous and thus could not support a termination decision. Captain Workman's motive was to address his personnel conflict and reverse his termination. Considering the content and context of the speech, Captain Workman was airing a grievance of a personal nature, and thus the speech in this case is not protected. Schalk, 906 F.2d at 495.
 
 
 38
 Captain Workman also argues his speech regarded a matter of public concern because it was sworn testimony before a governmental fact-finding body. However, the cases Captain Workman cites to support this proposition are not dispositive. In Langley v. Adams County, 987 F.2d 1473, 1478 (10th Cir.1993), the plaintiff claimed she was retaliated against in response to her testimony against the county in a coworker's federal district court case and for her later reports of discriminatory practices in the county. Captain Workman's testimony was given at his own posttermination proceeding, and he never filed reports of the department's tolerance of sexual harassment. In Johnston v. Harris County Flood Control Dist., the Fifth Circuit pointed out "under certain circumstances ... the context in which the employee speaks may be sufficient to elevate the speech to the level of public concern." 869 F.2d 1565, 1577 (5th Cir.1989), cert. denied, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). The Johnston court determined the sworn testimony before the county commissioners regarding an employment dispute was a matter of public concern. However, the plaintiff's testimony was given at a coworker's Equal Employment Opportunity hearing.
 
 
 39
 Captain Workman has not cited any cases holding that sworn testimony in an employee's own grievance proceeding is necessarily of a public concern. Captain Workman has not cited any Tenth Circuit or Supreme Court cases holding that sworn testimony outside of a court or grand jury is necessarily protected speech. See Langley, 987 F.2d at 1479; Melton v. City of Oklahoma City, 879 F.2d 706, 713-14 (10th Cir.1989), appeal after remand 928 F.2d 920 (10th Cir.), cert. denied --- U.S. ----, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991) (testimony at a friend's trial). Without such case law support, we are not satisfied that Captain Workman's testimony on his own behalf is per se a matter of public concern. We thus find the dismissal of the First Amendment claim appropriate.
 
 CONCLUSION
 
 40
 For the foregoing reasons, the district court's dismissal of the First Amendment claim against Sheriff Jordan and Undersheriff Dill is AFFIRMED and the denial of dismissal on the due process claims is REVERSED.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Court Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The investigator made factual findings that Captain Workman had made "wolf whistles" at a female employee; stood very close to a female employee and pinched her on the cheek; remarked to a female employee that women should work in jobs involving typewriters; commented about a female employee's job saying, "maybe we better give this job to a man to get it done right"; called women "bimbo," "sweetie," and "bitch"; made unwelcome touches; and used inappropriate sexual language
 
 
 [2]
 Claims, irrelevant to this appeal, against Michael Miller and David Worden were also dismissed. Mr. Miller was the captain who received the report of sexual harassment. Mr. Worden, as the personnel director, was responsible for the investigation of the allegations of sexual harassment
 
 
 [3]
 Captain Workman argues our precedent clearly established at the time of his termination that a constitutionally inadequate pretermination hearing could not be cured by an adequate posttermination hearing. See Wolfenbarger v. Williams, 774 F.2d 358, 363-65 (10th Cir.1985), cert. denied, 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986). Wolfenbarger is easily distinguishable as a case involving an actual deprivation of a protected interest
 Similarly, we find the United State Supreme Court's decision in Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), inapplicable. Zinermon questioned whether the existence of adequate postdeprivation procedures, such as state tort law proceedings, preclude a claim of constitutional deprivation caused by inadequate predeprivation procedures. The Court found the availability of state proceedings generally could not preclude a Sec. 1983 claim. Id. Unlike the case before us, the Court was faced with the deprivation of a protected right and the subsequent denial of an adequate remedy.
 
 
 [4]
 Captain Workman asserts he was additionally injured because the grievance proceeding caused emotional trauma, for which his lack of an employer-sponsored health plan did not cover the psychological care costs, and caused depletion of his savings and pension funds because of living expenses, attorney's fees, and costs. These incidental losses do not give rise to an independent protected property interest. Our authority to award these damages to a successful Sec. 1983 plaintiff is of no matter
 
 
 [5]
 The Colorado statute on personal injury limitations periods conveniently provides:
 The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:
 ....
 (g) All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute;
 ....
 (i) All other actions of every kind for which no other period of limitation is provided....
 Colo.Rev.Stat. Sec. 13-80-102 (1987).