**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THOMAS E. KINGSFORD,

        Plaintiff-Appellee,

v.

SALT LAKE CITY SCHOOL
DISTRICT,

        Defendant,

CHARLES J. SHACKETT,

        Defendant-Appellant.

No. 99-4204

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 97-CV-358)

---

Brent A. Burnett, Assistant Attorney General, (Jan Graham, Utah Attorney
General, with him on the briefs), Salt Lake City, Utah, for Appellant.

Stanley J. Preston, (Max D. Wheeler and Judith D. Wolferts with him on the
brief), Snow, Christensen & Martineau, Salt Lake City, Utah, for Appellee.

---

Before **TACHA**, Chief Judge, **McWILLIAMS** and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff Thomas Kingsford brought suit in the United States District Court for the District of Utah. One of his claims asserted that he was deprived of property without due process of law in his termination as head football coach at Highland High School ("Highland"). Named as defendants were the Salt Lake City School District ("SLCSD") and Charles Shackett, who was principal of Highland at the time Kingsford was terminated as head football coach. Defendants moved for summary judgment on Kingsford's property interest due process claim, asserting that Kingsford did not have a constitutionally-protected property interest in his position as football coach. Defendant Shackett also claimed he was entitled to summary judgment based on qualified immunity. Kingsford then filed a cross-motion for summary judgment on his property interest due process claim.

The district court granted Kingsford's motion for summary judgment on his property interest due process claim and denied Shackett's motion for summary judgment based on qualified immunity. Defendant Shackett has appealed the denial of his motion for summary judgment, claiming either that Kingsford does not have a constitutionally-protected property interest in his position as football coach or that he is entitled to qualified immunity because the law on which Kingsford relies was not clearly established at the time of the events underlying

this suit.  Jurisdiction to consider Shackett's appeal arises under 28 U.S.C. §
1291.  *See Johnson v. Fankell*, 520 U.S. 911, 915 (1997) ("[A] Federal District
Court order rejecting a qualified immunity defense on the ground that the
defendant's actions—if proved—would have violated clearly established law may
be appealed immediately as a 'final decision' within the meaning of the general
federal appellate jurisdiction statute.").    Because there is a factual question as to
whether Kingsford had a property interest in his position as football coach, this
court **remands** this question to the district court.  Because the law on which
Kingsford relies for his property interest due process claim was clearly
established at the time of the events underlying this suit, this court **affirms** the
district court's denial of Shackett's motion for summary judgment based on
qualified immunity.


## II. FACTS AND PROCEDURAL HISTORY

On July 21, 1981, Kingsford submitted an application to the SLCSD.
Under the portion of the application labeled "Position Desired," Kingsford
checked "Classroom Teacher" and listed "Coaching responsibilities" in the space
marked "Other."  On July 22, 1981, the SLCSD accepted Kingsford's application
and extended him a written contract offer for the position of "Teacher" at
Highland.  The contract did not mention any coaching responsibilities.  Kingsford

signed this contract on July 31, 1981. This contract is the only written contract signed by Kingsford with Highland or the SLCSD.

In addition to teaching math and physical education classes at Highland, Kingsford has throughout his employment been involved in coaching many sports, including football, basketball, track, and baseball. Between 1981 and 1985, Kingsford served as an assistant football coach. In 1985, Kingsford became head football coach.

As the head football coach, Kingsford was the instructor for the "Athletics Football" course. Students on the football team were given one-fourth of a credit hour for each year of participation on the football team, which counted toward fulfilling "Lifetime Activities PE" graduation requirements. Students were awarded grades for their participation in the "Athletics Football" course, and Kingsford, as instructor, was apparently responsible for making those grade determinations.

Kingsford remained head football coach until March 22, 1996, when he received a letter from the Assistant Superintendent of Personnel of the SLCSD. The letter informed Kingsford that he was suspended from his coaching position assignment until June 6, 1996, at which time he would be terminated from his coaching position. Despite being terminated as a coach, Kingsford has been allowed to continue teaching at Highland.

Kingsford filed suit in the United States District Court for the District of Utah against the SLCSD and Highland principal Charles Shackett, claiming, in part, that he was deprived of his property interest as head football coach without due process of law. Defendants moved for summary judgment on Kingsford's property interest due process claim, arguing that Kingsford did not possess a property interest in his position as head football coach. Defendant Shackett also claimed that even if such a right existed it was not clearly established at the time of the events underlying this suit, thus entitling him to qualified immunity. Kingsford responded by filing a cross-motion for summary judgment on his property interest due process claim.

After oral argument, the district court awarded Kingsford summary judgment on his property interest due process claim and denied Shackett's motion for summary judgment based on qualified immunity. The district court determined that Kingsford had obtained a property interest in his position as head football coach and, because Defendants had not disputed that the dismissal procedures were lacking if a property interest was found, granted Kingsford's motion for summary judgment on the claim. The district court also determined that Shackett was not entitled to qualified immunity on Kingsford's property interest due process claim because the rights violated by Shackett were clearly established at the time of the events underlying this litigation. Although the

parties raised and the district court addressed many additional issues in the proceedings below, the only issue appealed and argued to this court is Defendant Shackett's assertion that he is entitled to qualified immunity either because Kingsford does not have a valid property interest protected by the Fourteenth Amendment or because such a right was not clearly established at the time of the events underlying this litigation.[1]

## III. DISCUSSION

### A. Standard of Review

This court reviews the grant or denial of summary judgment *de novo*, applying the same legal standard employed by the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *See Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1102 (10th Cir. 1996). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1]This court recognizes that the grant of Kingsford's motion for partial summary judgment against the SLCSD is not before this court. The issue of whether Kingsford had a property interest under the Fourteenth Amendment, which this court addresses in reference to the denial of Shackett's motion for qualified immunity, appears to be identical whether the defendant is Shackett or the SLCSD. The district court can determine on remand how this opinion affects the previous grant of summary judgment against the SLCSD on Kingsford's property interest due process claim.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court construes the evidence in the light most favorable to the nonmoving party. *See Cent. Kan. Credit Union*, 102 F.3d at 1102.

## B. Property Interest

A property interest in continued public employment is not created by the Constitution. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rather, a property interest in continued public employment must "stem from an independent source such as state law." *Id.*; *see also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1234 (10th Cir. 1998). State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts. *See Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991). A public employee such as Kingsford must have a "legitimate claim of entitlement" to continued public employment for a property interest to arise; a "unilateral expectation" of continued public employment is not sufficient to create a property interest. *Roth*, 408 U.S. at 577. While a property right can only be created by state law, once a property right is established, the determination of what process is due before that right can be deprived is a question answered by the federal Constitution. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-45 (1985). Kingsford claims a property interest in his continued employment

as head football coach was created by the Utah Orderly School Termination Procedures Act ("Orderly Termination Act"), the contract between the SLCSD and the Salt Lake Teachers Association which governs SLCSD teachers ("Written Agreement"), and an implied agreement with the SLCSD that he would only be removed for cause. *See* Utah Code Ann. §§ 53A-8-101 to -107 (1997) (amended 1999).

The analysis begins with the Orderly Termination Act.[2] Shackett argues that the Orderly Termination Act did not create a reasonable expectation by Kingsford that he would continue to be employed as head football coach. In support of his argument, Shackett relies on the unpublished Utah state case of *Parker v. Board of Education.*, Civil No. 96-03-06050CV (Summit County, Utah D.C. Aug. 12, 1996). In *Parker*, a Utah district court ruled that a teacher who had

---

[2]After the events prompting this lawsuit, the Orderly Termination Act was amended in 1999 to specifically state that "[a]n employee who is given extra duty assignments in addition to a primary assignment, such as a teacher who also serves as a coach or activity advisor, is a temporary employee in those extra duty assignments and may not acquire career status beyond the primary assignment." Utah Code Ann. § 53A-8-106(4). Under Utah law, "a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively unless the legislature has clearly expressed that intention." *Roark v. Crabtree*, 893 P.2d 1058, 1061 (Utah 1995) (quotation omitted); *see also* Utah Code Ann. § 68-3-3. There is no indication that the Utah legislature intended these substantive amendments to apply retroactively. To the contrary, the legislature established an effective date for the amendments but said nothing about possible retroactive application. *See* 1999 Utah Laws Ch. 324. Thus, the 1999 amendments will not be considered.

been dismissed from his coaching duties had no expectation of continued employment in his duties as coach. In reaching this decision, the court made a conclusion of law stating that "the Orderly Termination Act provides an expectation of continued employment only to those granted such rights under a collectively bargained agreement, or under the policies or practices of the School District or in an individual contract with an employee." Thus, according to the Utah district court, an employee cannot rely on the Orderly Termination Act to establish a property interest in public employment, but instead must produce specific contracts or "policies or practices" of the public employer.

Although the unpublished district court order has no precedential value under Utah law, it appears to be a correct interpretation of Utah law. *See* Utah Rules Judicial Admin. R. 4-508. In *Broadbent v. Board of Education*, the Utah Court of Appeals intimated that employees must look to sources other than the Orderly Termination Act for an expectation of continued employment. *See* 910 P.2d 1274, 1279 (Utah Ct. App. 1996) (stating that the Orderly Termination Act "has never granted provisional educators any significant protections beyond those found in their employment contracts"). Although the Orderly Termination Act distinguishes between "career employees," "provisional employees," and "temporary employees," a "career employee" is defined as an employee "who has obtained a reasonable expectation of continued employment based upon an

agreement with the employee or the employee's association, district practice, or policy." *See* Utah Code Ann. §§ 53A-8-102 (1997) (amended 1999).

The Orderly Termination Act does provide some limited procedural protections to school employees. *See* Utah Code Ann. §§ 53A-8-103 to -104 (1997) (amended 1999). It is well established in this circuit, however, that procedural protections alone do not create a claim of entitlement to continued public employment. Rather, a legitimate claim of entitlement to continued public employment arises only when there are substantive restrictions on the ability of the employer to terminate the employee. *See Asbill v. Hous. Auth.*, 726 F.2d 1499, 1502 (10th Cir. 1984) ("[P]rocedural protections do not support a 'legitimate claim of entitlement' to future employment. . . . [P]rocedural protections alone do not create a protected property right in future employment; such a right attaches only when there are substantive restrictions on the employer's discretion. For example, if a statute . . . specifies the grounds on which an employee may be discharged, or restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown." (footnote omitted)). Thus, because the Orderly Termination Act provides only procedural protections to employees and defers any substantive protections to "agreement[s] with the employee or the employee's association, district practice, or policy," this court must look, as the

district court did, to the Written Agreement between the Salt Lake Teachers Association and the SLCSD to determine if Kingsford had a reasonable expectation of continued employment as head football coach.

The Written Agreement between the SLCSD and the Salt Lake Teachers Association states that "teachers" may be dismissed only for "just cause." A contract that promises continued employment except for "just cause," if such promise is applicable to Kingsford in his position as head football coach, creates a property interest in continued employment. *See, e.g.*, *Loudermill*, 470 U.S. at 538-39 (stating that Ohio law which allowed for termination of classified civil servants only for "misfeasance, malfeasance, or nonfeasance" creates property right in continued employment (quotation omitted)); *Roth*, 408 U.S. at 577-78 (stating that "rules or understandings" that employee could be dismissed only for "sufficient cause" could create a property right in continued employment). Thus, the relevant question becomes whether, under the Written Agreement, Kingsford was a "teacher" in his capacity as head football coach; the district court determined that he was.

In interpreting the contract, this court must apply the Utah law of contract construction. Under Utah law, the intentions of the parties are controlling. *See John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987). If the contract is in writing and the language is unambiguous, the intention of the

-11-

parties must be determined from the words of the contract. *See Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987). Extrinsic evidence may be considered only if the contract language is ambiguous or uncertain. *See id.*

The Written Agreement defines "teacher" as "all certificated contract personnel employed by the district and paid on the teacher's salary schedule." Defendant Shackett maintains that Kingsford was not a "teacher" with respect to his coaching position because he was not "paid on the teacher's salary schedule" for his coaching duties. The Teacher's Salary Schedule is a grid found in the Written Agreement that determines the level of pay for teachers in the SLCSD. The grid consists of vertical "steps" and horizontal "lanes." Vertical "steps" represent increases in salary that are awarded based on longevity within the SLCSD. A teacher also gains higher pay by shifting horizontal "lanes," which is done by achieving higher levels of education.

When Kingsford was terminated as head football coach, he had obtained the highest possible pay allowed at that time under the Teacher's Salary Schedule grid: $43,982. Because of Kingsford's coaching obligations, however, he received an additional $5,730 beyond the maximum allowed under the Teacher's Salary Schedule grid. Thus, Kingsford's total salary at the time he was terminated was $49,712.

According to Article 18 of the Written Agreement, which is entitled "EXTRACURRICULAR ACTIVITIES," individual schools within the SLCSD such as Highland are given funds "to be used for payment of teaching personnel directing the extracurricular activities." An individual school can allocate these funds through a system developed on its own or by adopting the recommended pay scale outlined in Article 18 of the Written Agreement. The record indicates that Kingsford was paid for his head football coaching duties in accordance with the recommended extracurricular activities pay scale found in Article 18 of the Written Agreement (as opposed to the Teacher's Salary Schedule), with additional pay received for his involvement in four weeks of summer camps and his position as assistant basketball coach.

Kingsford argues that he was a "teacher" under the Written Agreement in his position as head football coach because he was treated as such by Highland and the SLCSD. Kingsford notes that football is a curricular course at Highland for which students receive grades, that Utah law requires high school head football coaches to be certified secondary teachers, that various SLCSD documents refer to his position as "coach/teacher," and that his coaching pay stubs indicate that he was on "contract." Under the Written Agreement, however, Kingsford was a "teacher" only if he was "paid on the teacher's salary schedule" with respect to his coaching position. As previously indicated, Kingsford

-13-

received extra compensation for his coaching activities *in addition* to his salary under the Teacher's Salary Schedule.

Kingsford argues that he was "paid on the teacher's salary schedule" because his head coaching pay consisted of thirteen days of pay at his teacher's salary. Because his teaching salary was calculated with reference to the Teacher's Salary Schedule and his coaching pay was tied to his teaching salary, Kingsford argues, his coaching pay was also on the Teacher's Salary Schedule. That Kingsford's coaching pay was based on his teachers's salary, however, does not mean that he was "paid on" the Teacher's Salary Schedule. Neither the additional pay Kingsford received from his coaching duties nor his total compensation for the year he was terminated as coach are figures that can be found on the Teacher's Salary Schedule.

Kingsford also notes that many of his salary "lane" changes on the Teacher's Salary Schedule were for football-related courses that he attended after beginning his employment at Highland. That Kingsford was allowed lane changes for football-related courses is fully consistent with Kingsford's role as instructor of the football class. When Kingsford was removed as "football coach" at Highland, he was terminated as both instructor of the football class and as head football coach. Despite the fact that Kingsford is no longer instructor of the football class, he remains employed as a teacher and continues to receive the

highest possible salary on the teacher's salary schedule. Kingsford's due process claim, however, is not based on his removal as the instructor of the football class; he has not argued that the Written Agreement provided him with a legitimate claim to continued employment teaching the exact same classes as he had previously taught. Rather, he has argued that the Written Agreement provided him with an expectation of continued employment as coach of the football team. Under the Written Agreement, Kingsford had a legitimate claim of continued employment as coach only if he was a "teacher" in his coaching responsibilities. Kingsford was not a "teacher" in his role as football coach, however, because he was not "paid on the teacher's salary schedule" for his football coaching duties. That Kingsford, in his role as *instructor* of the football class, received lane changes for the football-related classes he attended is inconsequential to how Kingsford was paid in his position as football *coach*. Thus, the Written Agreement does not create a property interest by Kingsford in his position as head football coach.

Kingsford also claims that a property interest in continued employment as head football coach was created by an implied agreement with the SLCSD that he would be terminated only for cause. Under Utah law, unless there is an employment contract with a definite term of duration, the employment is presumed to be at-will. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 53 (Utah

-15-

1991).  Because Kingsford did not sign a coaching contract with a definite term of duration, his employment as football coach is presumed to be at-will under Utah law.  This presumption, however, "can be overcome by an affirmative showing by the plaintiff that the parties . . . impliedly . . . agreed to terminate the relationship for cause alone."  *Berube v. Fashion Ctr, Ltd*, 771 P.2d 1033, 1044 (Utah 1989).

Thus, under Utah law, it is possible that Kingsford developed a legitimate claim of entitlement to continued employment as football coach based on an implied-in-fact promise that he would not be terminated as football coach except for cause.  *See id.*; *cf. Perry v. Sinderman*, 408 U.S. 593, 599-603 (1972) (stating that whether a property interest was created by understanding between teacher and administration is a factual question).  An implied-in-fact promise to terminate only for cause can be demonstrated by "the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances which show the existence of such a promise."  *Berube*, 771 P.2d at 1044.  The determination of whether an implied-in-fact promise to terminate only for cause exists is a question of fact for the jury, with the employee bearing the burden of proof.  *See id.*

In support of his implied-in-fact property interest theory, Kingsford points to the deposition testimony of Defendant Shackett and the SLCSD Assistant Superintendent over Personnel at the time Kingsford was terminated indicating

-16-

that coaches should only be fired if there is some "logical rationale" or "reasonable justification," and not for an "arbitrary or capricious" reason. In addition, Kingsford also stated in a deposition that he believed he would retain the coaching position for as long as he wanted it, and that he thought he could only be terminated as coach for "[t]he way that you treated kids [and] wins and losses." This evidence, taken in the aggregate, suggests that there may have been a policy at Highland and the SLCSD that coaches would only be terminated for cause. Such a policy could constitute an implied-in-fact promise under Utah law that Kingsford would only be terminated for cause. *See id.*

There is also substantial evidence in the record, however, that coaches at Highland serve at the discretion of the principal. Because there is conflicting evidence on the factual question of whether there was an implied-in-fact promise to Kingsford that he would be removed as football coach only for cause, the issue cannot be decided at the summary judgment stage. *See* Fed. R. Civ. P. 56(c). Thus, it is necessary to remand this issue to the district court.

### C. Qualified Immunity

The district court denied Defendant Shackett's motion for summary judgment based on qualified immunity. Government officials are shielded from liability for civil actions for damages unless their conduct violated clearly-established statutory or constitutional rights of which a reasonable person would

have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is the plaintiff's burden to prove that the law on which he relies was clearly established at the time of the events underlying his suit. *See Hilliard v. City & County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991). Although a plaintiff need not demonstrate that the specific action in question has previously been held unlawful, the right allegedly violated must be sufficiently clear so that a reasonable official could understand that his conduct violated that right. *See id.*

There is a factual dispute as to whether there was an implied-in-fact promise that Kingsford would only be dismissed as football coach for cause. When a defendant has moved for summary judgment based on qualified immunity, this court construes the facts in a light most favorable to the nonmovant. *See Calhoun v. Gaines*, 982 F.2d 1470, 1474 n.3 (10th Cir. 1992). Thus, it must be assumed that there was an implied-in-fact promise that Kingsford would only be terminated from his football coaching position for cause.

It is well established that an implied-in-fact contract is a source of state law that can potentially create an expectation of continued public employment. *See, e.g.*, *Perry*, 408 U.S. at 601-02; *Carnes*, 922 F.2d at 1509. The theory under which Kingsford attempts to prove a property interest was well established under Utah law. Kingsford has offered evidence indicating that it was the policy of the SLCSD and Highland that coaches would only be fired for cause. The Utah

-18-

Supreme Court stated in 1989 that an implied-in-fact promise limiting the reasons for dismissal may arise from "the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances which show the existence of such a promise." *Berube*, 771 P.2d at 1044. Thus, it was clearly established under Utah law that such a policy on the part of Highland and the SLCSD could create a legitimate expectation of continued employment as football coach. The decision of the district court denying Shackett qualified immunity is affirmed.

## IV. CONCLUSION

For the reasons stated above, this court **AFFIRMS** the district court's opinion in part and **REMANDS** for further proceedings consistent with this opinion.