**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KIM FITZPATRICK COLEMAN, an
individual,

    Plaintiff - Appellant,

v.

UTAH STATE CHARTER SCHOOL
BOARD; MARLIES BURNS, an
individual; BRIAN ALLEN, an individual;
TOM MORGAN, an individual; JULIE
ADAMIC, an individual; YOLANDA
FRANCISCO-NEZ, an individual; SCOTT
SMITH, an individual; JOHN PINGREE,
an individual; TIM BEAGLEY, an
individual; CAROL LEAR, an individual,

    Defendants - Appellees.

No. 15-4141
(D.C. No. 2:10-CV-01186-TC)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MURPHY**, and **PHILLIPS**, Circuit Judges.
_____

Kim Fitzpatrick Coleman alleges that members of the Utah State Charter School

Board ("the State Charter Board") and its staff director violated her due-process rights

preceding her nonrenewal as the director of the Monticello Academy charter school. The

district court granted summary judgment against her public-employment claims and

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denied her motion to amend her complaint to add a new claim that the government had interfered with her private employment as an on-leave board member of the school. We affirm.

## BACKGROUND

In 2006, Coleman co-founded the Monticello Academy, a charter school in West Valley City, Utah run by the private nonprofit Monticello Academy, Inc. Initially, she served on the Monticello Academy's board of directors, but in 2008 she took a leave of absence from the board to become the paid director of the school.[1] Her initial term of employment was for fifteen months. After that, the Monticello Academy board had two one-year renewal options. Monticello Academy's charter states that all employees serve at will, and Coleman's contract was explicit that she "is an at-will employee" and that "this Agreement will control and supersede such other material."[2] Appellant's App. at

---

[1] Coleman's husband, Joel Coleman, was on the Monticello Academy board when it voted to hire her, but he recused himself.

[2] The full "At-Will Employment" section of Coleman's contract reads as follows:

> Employee recognizes that he or she is an at-will employee, meaning that his or her employment can be terminated by Employer, with or without cause or notice, at any time. No promise of employment for a definite duration is given by this Agreement or by any other material received by Employee from Employer or from A-Plus. This Agreement in no way modifies the at-will nature of Employee's employment. In the event of any contrary provisions contained in other materials received by Employee and this Agreement relative to at-will employment status, this Agreement will control and supersede such other material.

Appellant's App. at 1251 (all text capitalized in original).

1251. Among other job duties, Monticello Academy board members told Coleman that the board expected her to work on getting a high school built for the charter school.

When parents complained to it about Coleman's not providing required special-education services at Monticello Academy, the State Charter Board stepped in and investigated. It found the parental complaints warranted. The State Charter Board drafted findings, including that Coleman had created a school environment in which special-education services were withheld from students legally entitled to them.[3] Based on the State Charter Board's findings, it directed that the Monticello Academy board remove Coleman from all school operations and bar her from campus in any potentially-disruptive capacity. But the Monticello Academy board did its own investigation, placing Coleman on paid administrative leave until June 30, 2009, when her employment contract expired. Coleman contests the State Charter Board's findings about her stewardship of the school.

During Monticello Academy's investigation, the Salt Lake Tribune newspaper published a 270-word article saying that "state education officials" had ordered that Coleman "be placed on paid administrative leave pending an investigation into allegations of financial mismanagement" at Monticello Academy. Appellant's App. at 2110. The article said this action arose from parental complaints "about low teacher morale and efforts to block parental involvement in the school's management." *Id*. The sole quote from a named source was from Brian Allen, the State Charter Board's

---

[3] The State Charter Board also found that Coleman had exhibited "unprofessional behavior" at staff meetings and had created an "atmosphere of intimidation." Appellant's App. at 1517.

chairman, who offered praise, saying that "[w]e have a very capable principal and assistant principal running the school," and advising that "[t]he board has it well under control. I think they're trying to do the right thing." *Id.* In February 2009, the Monticello Academy board appealed the State Charter Board's initial findings to state education officials. Even before it began its self-investigation of Coleman, the Monticello Academy board advised the State Charter Board that it would appeal unless the initial findings were withdrawn. In April 2009, Coleman sued the State Charter Board in state court for violating the Utah Open and Public Meetings Act, codified in Utah Code. Ann. §§ 52-4-101 to -305. After concluding its investigation, the Monticello Academy board found no wrongdoing by Coleman. Coleman demanded that the State Charter Board provide her with the bases for its decision, but she says that the State Charter Board did not do so.

Eight months after it issued them, the State Charter Board voided its preliminary findings about Coleman's deficiencies running the school as its director;[4] but after meeting again, it issued new findings reaffirming that Coleman had denied required special-education services to Monticello Academy students, and directing that she be removed as the school's director. The State Charter Board made those findings public according to its usual practice.[5] The Utah Board of Education and the Utah State Office of Education ratified the second version of the findings. When Coleman's term of employment expired, the Monticello Academy board did not renew her contract.

---

[4] This action resolved Coleman's state-court lawsuit.

[5] The State Charter Board posts minutes from its meetings—as far back as 2004—on its website.

In response to the later findings, Coleman filed a second state-court suit against the State Charter Board, its members, and its staff director, pleading thirteen claims for relief. The defendants removed the case to federal court, where the district court dismissed all but one of Coleman's claims. Later, the district court granted summary judgment on the sole remaining claim, one asserting a violation of 42 U.S.C. § 1983 based on an alleged procedural-due-process violation.[6] The district court also denied Coleman's motion to amend her complaint to add a claim for governmental interference with private employment—which she identified as her position on Monticello Academy's board of directors and potential future jobs, not her public position as director of Monticello Academy. Coleman appealed.

## DISCUSSION

On appeal, Coleman argues that the district court misapplied the summary-judgment standard in disposing of her procedural-due-process claims premised on asserted property rights and liberty interests. We conclude that the district court properly applied the summary-judgment standard in rejecting her property-interest claim based on continued employment and her liberty-interest claim based on defamation. Coleman also argues that the district court wrongly denied her motion to amend her complaint to claim

---

[6] The district court dismissed with prejudice these claims: the § 1983 claims against the State Charter Board and state officials acting in their official capacity; the First Amendment intimate-association claim; the freedom-of-speech retaliation claim; the substantive-due-process claim; the Fourteenth Amendment equal-protection claim; the Utah Constitution uniform-operation-of-laws claim; the Utah Constitution open-courts claim; the intentional-infliction-of-emotional-distress claims against all defendants except Marlies Burns; and the intentional-interference-with-economic-advantage claim. Coleman voluntarily withdrew her state claims based on property takings, defamation, slander, and libel.

governmental interference with her private employment, that being her unpaid position on the Monticello Academy board and her future employment in the education field. We conclude that the district court correctly determined that our circuit has not yet recognized a claim for governmental interference with private employment with charter schools, meaning that Coleman could not show that the defendants had violated a clearly established constitutional right.

## I.      Standard of Review

We review de novo a district court's grant of summary judgment and, in doing so, use the same standard that applies in the district court. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Under this standard, we view facts most favorably to the nonmoving parties, and we resolve all factual disputes and reasonable inferences in their favor. *Id.* We grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). "To avoid summary judgment, the nonmovant must make a showing sufficient to establish an inference of the existence of each element essential to the case." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). But the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). We normally review a denial of a motion to amend a pleading for abuse of discretion, but if the district court based the denial on futility, we review de novo the legal basis of the futility. *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010). An

6

amendment is futile if the amended complaint would be subject to dismissal for any reason, including summary judgment. *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

## II. Property Interest

Because the defendants asserted qualified immunity in the district court, the burden shifts to Coleman to show both that the defendants violated her rights and that clearly established law protected those rights at the time of the violation. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). Coleman claims that the State Charter Board members violated her Fourteenth Amendment property interest in continued employment with Monticello Academy. Faced with explicit at-will employment language in her employment contract, Coleman provides two arguments to override it. First, she relies on an implied understanding between her and the Monticello Academy board that she would remain the director for several years. Second, she relies on the Utah Charter Schools Act ("the Schools Act"), Utah Code Ann. §§ 53A-1a-501 to -524, which sets out procedures that the State Charter Board must follow before it takes certain actions. We reject both arguments and hold that Coleman had no protected property interest in her employment with Monticello Academy.

### A. Implied Understanding

Procedural due process flows from the Fourteenth Amendment's protection against deprivations of life, liberty, or property "without due process of law." U.S. Const. amend. XIV, § 1; *Hyde Park Co. v. Sante Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). But procedural due process protects only certain property interests. *See Bd. of*

7

*Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A plaintiff must show a right to continued employment to establish a property interest in public employment that due process protects. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *see Roth*, 408 U.S. at 576. The Constitution does not create the protected property interest or the right to continued employment. *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007). Rather, independent sources, including state law, contracts, or other "mutually explicit understandings," create the interest. *Teigen*, 511 F.3d at 1079 (quoting *Robbins v. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006)). "At-will employees lack a property interest in continued employment." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1252 (10th Cir. 2007).

Here, Coleman argues that a mutually explicit understanding between her and the Monticello Academy board should trump the written language of both her contract and the school's charter. Coleman's contract states unambiguously that the "Employee recognizes that he or she is an at-will employee, meaning that his or her employment can be terminated by Employer, with or without cause or notice, at any time." Appellant's App. at 1251. The agreement also "control[s] and supersede[s]" all other material that might indicate a relationship that is not at will. *Id.* Coleman signed and dated the contract. Seeking to avoid her agreed employment terms, Coleman protests that her employment contract was a form agreement drafted by a third-party human-resources firm. But Coleman signed it and is bound by it. And any suggestion that Coleman's at-will employment was accidental faces other insurmountable hurdles. First, Monticello Academy's charter states that "[a]ll employees are 'at-will.'" *Id.* at 1254. And second,

8

Utah exempts charter-school employees from the for-cause status conferred on some public-school employees. Utah Code Ann. § 53A-1a-512(3)(a).[7]

But Coleman insists that she and the Monticello Academy board had a mutual understanding, amounting to an implied contract, that she would serve as director until a new high school was built. Though the board members wanted Coleman to get a high school built in the next several years, that desire does nothing to rebut the explicit at-will language in Coleman's employment contract and the school's charter. Employers hire employees to do tasks. But employees do not get to ignore their contract terms to complete their tasks.

Coleman relies heavily on *Kingsford v. Salt Lake City School District*, 247 F.3d 1123 (10th Cir. 2001), in which we enforced a mutual understanding between a high-school football coach and the school district that he could be fired as the coach only for cause, despite his written contract not saying one way or the other. *Id.* at 1129-30, 1133. Coleman is right that *Kingsford* is an example of a situation in which we were willing to recognize the power of implicit contract terms. But *Kingsford* differs from Coleman's case in a critical, obvious way: in *Kingsford*, the coach had no explicitly at-will contract that covered his coaching position. *Id.* at 1129-30. Rather than override explicit contractual language, which Coleman asks us to do, the court used the conduct of school administrators to fill a gap. *Id.* at 1132. Thus, Coleman's case lacks the kind of legally relevant, conflicting evidence that prevented summary judgment in *Kingsford*. *See id.*

---

[7] Specifically, this section exempts charter-school employees from the Public Education Human Resource Management Act. *See* Utah Code Ann. § 53A-8a-501.

Coleman's efforts to build a new high school could not enlarge her at-will employment when faced with the unambiguous at-will language of her contract. As a matter of law, then, Coleman was always an at-will employee without a right to continued employment and procedural due process protection.

### B.      Utah Statute

Nor does the Schools Act create a protected property interest for Coleman. Not every violation of state law is a violation of federal due process. *Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012). Specifically, if a state law mandates only procedure, rather than for-cause termination or other substantive restrictions, it does not create a property interest that federal due process protects. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1254 (10th Cir. 1998); *Asbill v. Housing Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1502 (10th Cir. 1984).

Coleman argues that the Schools Act establishes a property interest because it mandates certain procedures that the State Charter Board must follow. If a charter school does not comply with state law or its own charter, the State Charter Board must notify the school of the problem in writing and give it a "reasonable time to remedy the deficiency." Utah Code Ann. § 53A-1a-509(1). Only if the school does not remedy the problem within that reasonable amount of time can the State Charter Board take actions, such as removing the school's director. *Id.* § 509(2). Coleman cites *Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1254 (10th Cir. 2005), where we held that regulatory restrictions on termination can create a property interest. But again, not all restrictions create protected property interests. The restrictions in *Copelin-Brown* were

10

decidedly substantive: before it could act, the government employer had to make such content-intensive findings as the extent of an employee's disability and the availability of other jobs. *Id.* In contrast, the Schools Act restrictions do not force the State Charter Board to adjust the reasons for its actions, only the timing. These are procedural restrictions. As such, they do not trigger federal due process.

## III.    Liberty Interest Defamation

Coleman claims that the defendants made three statements that defamed her reputation and foreclosed other employment opportunities, thus violating her liberty interest under the Due Process Clause of the Fourteenth Amendment. Coleman first relies on statements made in the State Charter Board's initial findings issued on January 20, 2009 ("the initial findings"). She next relies on statements made in the Salt Lake Tribune newspaper article. And finally she relies on statements from the State Charter Board's August 13, 2009 board-meeting minutes, at which the State Charter Board developed its second set of findings against Coleman that it later published online ("the August minutes"). We find that each statement lacks at least one necessary element required to show a defamatory statement that violates Coleman's due process liberty interest.

### A.    The Initial Findings

Under the Due Process Clause, public employees have a liberty interest in their reputations, but only in the context of their employment. *Paul v. Davis*, 424 U.S. 693, 701, 706 (1976); *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014). At-will status does not preclude the interest. *McDonald*, 769 F.3d at 1212 n.2. In this circuit, claims based on liberty interests require proof not only of defamatory statements injuring an

11

employee's reputation, but also proof of harm that forecloses other employment opportunities. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153-54 (10th Cir. 2001). The statement must also be false, made in the course of an employee's termination, and published. *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).

None of the initial findings deprived Coleman of a liberty interest because no one published them. To prove that statements were published, a plaintiff must prove more than mere sharing with other persons. For instance, internal governmental sharing of information is not publishing. *Asbill*, 726 F.2d at 1503; *see also Bishop v. Wood*, 426 U.S. 341, 348 (1976) (holding that being "made public" is the operative test for whether someone has published a defamatory statement).

Coleman claims that Brian Allen, as a State Charter Board member, published the State Charter Board's initial findings by sharing them with the Monticello Academy board members. Further, she claims that Marlies Burns, the State Charter Board staff director, published the initial findings by e-mailing them to Monticello Academy board members. Coleman reasonably infers that the e-mail recipients read them. And the Monticello Academy board members, unlike Monticello Academy's employees, are not, strictly speaking, government officials. But charter schools are public schools using public funds to educate school children. As this case and the Schools Act amply demonstrate, charter schools are not free-floating entities unmoored from state governmental oversight and control. *See* Utah Code Ann. §§ 53A-1a-501 to -524. Meetings between government officials and those who oversee a charter school, especially concerning the application and enforcement of the regulations that bind the

12

two groups together, retain the fundamental character of intra-governmental meetings. Thus, the defendants' sharing of the findings, which concern nothing but charter-school regulations and enforcement, is not publishing and does not implicate Coleman's liberty interest under the Due Process Clause.

## B. The Newspaper Article

Coleman's liberty-interest claims based on the newspaper article fail because she fails to tie any defendant to the newspaper article's statements that she argues defamed her. Instead, Coleman asks the court to assume that one or more of the defendants anonymously gave the newspaper reporter the allegedly defamatory statements. The one defendant quoted in the article, Brian Allen, voiced support for Monticello Academy: "The [Monticello Academy] board has it well under control. I think they're trying to do the right thing." Appellant's App. at 2110. Coleman first blamed Brian Allen, and later Marlies Burns, for the article's statements about financial mismanagement and conflicts of interest at Monticello Academy.

We agree with the district court that Coleman infers too much in arguing that Brian Allen and Marlies Burns must have given the newspaper reporter defamatory statements because they had investigated her actions as director of Monticello Academy. Allen denies that he was the source. And Coleman never asked the Tribune's reporter to identify her sources. In short, Coleman builds her liberty-interest claim from speculation, which is insufficient to survive summary judgment. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006) ("Inferences supported by conjecture or speculation will not defeat a motion for summary judgment.").

13

## C. The August Board Minutes

Nothing in the State Charter Board's August minutes deprived Coleman of a liberty interest. Simply put, Coleman failed to offer sufficient evidence that the board's publication of those minutes foreclosed Coleman's employment opportunities in the education field. To prevail on her liberty-interest claim based on defamation, the defamation "must occur in the course of terminating the employee *or* must foreclose other employment opportunities." *Workman*, 32 F.3d at 481 (emphasis added). But we have later held that the "or" really means "and." *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 728 n.1 (10th Cir. 2000) ("At first blush, it appears that this prong of the test can be met either by statements made in the course of terminating an employee or, in the alternative, by any other statements that might foreclose other employment opportunities. . . . [But] we conclude that the *Workman* court did not intend to create a test under which a liberty interest might be infringed by any defamatory statement that might foreclose future employment opportunities.") Coleman admits that she can provide no evidence of specific job opportunities that she lost because of the public impact of the August minutes.

Coleman counters that she need show only that a statement is defamatory enough to make its victim "an unlikely candidate for employment by a future employer." *Melton v. City of Oklahoma City*, 928 F.2d 920, 927 n.11 (10th Cir. 1991). But Coleman's reputation is more resilient than she gives it credit for. The record shows that she remains employable in the education field. After all, Monticello Academy continued to give her project-based job offers, and, after the State Charter Board approved, she even accepted

14

one for pay. In addition, she has also worked as a private contractor for the West Ridge Academy—a treatment center and private school that was applying to open a public charter school. And, more generally, she managed a successful Congressional campaign and later won a seat in the Utah House of Representatives, where she sits on the Education Committee.

## IV.    Arbitrary Governmental Interference with Private Employment

No clearly established right protects a private board member of a charter school from regulation by government agencies. To overcome qualified immunity, Coleman must establish both that she suffered a constitutional-right violation and that the violation was against clearly established law, meaning that existing precedent placed it "beyond debate" that the State Charter Board had violated Coleman's constitutional rights. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The relevant case law need not prohibit the exact same action or involve the same facts as the alleged violation, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), but neither can it merely contain a general legal proposition that does not advise every reasonable official that the challenged conduct violates the constitution, *see Mullenix*, 136 S. Ct. at 308; *al-Kidd*, 536 U.S. at 741. "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Supreme Court has long held that the government may not arbitrarily interfere with private employment. The precise nature of the right has evolved over the past

15

century, with some iterations of it now on firmer ground than others,[8] but the right has found a modern home in procedural due process. One of the first cases to declare the right casts it as arising under due process. *Dent v. West Virginia*, 129 U.S. 114, 123-24 (1889). "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose . . . ." *Id.* at 121. But the Court has always permitted some regulation. In *Dent*, for instance, the Court upheld a state licensing system for the medical profession. *Id.* at 128.

The Court invigorated the right against governmental interference with employment in *Truax v. Raich*, 239 U.S. 33, 35, 42-43 (1915), in which an Austrian-born cook in an Arizona restaurant challenged the constitutionality of a state employment statute after it caused his termination. The Court struck down the state law, which had mandated that "[a]ny company, corporation, partnership, association or individual who is, or may hereafter become an employer of more than five (5) workers at any one time" employ at least "eighty (80) per cent qualified electors or native-born citizens." *Id.* at 35. The Court invoked the Fourteenth Amendment's Equal Protection Clause rather than its

---

[8] In *Prudential Insurance Co. of America v. Cheek*, 259 U.S. 530 (1922), the Court upheld a Missouri law mandating that companies provide letters of reference to departing employees. But the Court noted that the same mandate on individuals likely would be impermissible because "freedom in the making of contracts of personal employment . . . is an elementary part of the rights of personal liberty and private property, not to be . . . arbitrarily interfered with." *Id.* at 536. The freedom-of-contract language echoes the economic substantive-due-process holding of *Lochner v. New York*, 198 U.S. 45, 64 (1905), *overruled in part by Ferguson v. Skrupa*, 372 U.S. 726 (1963), and relies partly on two other *Lochner*-era cases that the Court later overturned, *see Coppage v. Kansas*, 236 U.S. 1 (1915), *overruled in part by Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177 (1941); *Adair v. United States*, 208 U.S. 161 (1908) (same).

16

Due Process Clause. *Id.* at 39, 41-42. The Court also extended employment protection from governmental interference to all employees, including those serving at will. *Id.* at 38.

In *Greene v. McElroy*, 360 U.S. 474, 508 (1959), the Court again found that the government had interfered with a private employee's rights, under the Fifth Amendment's Due Process Clause. The employee worked for a defense contractor and the federal government revoked his security clearance without a hearing, all but destroying his ability to find work in the defense industry. *Id.* at 492. Relying on the employee's liberty and property interests under the Due Process Clause, the Court found that the summary revocation violated "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference." *Id.*

Finally, in *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 240 (1988), the Court recognized a right against governmental interference with employment in the context of regulated banking. The plaintiff was the president and a director of a federally insured bank. *Id.* at 233. He had been indicted on federal charges of making false statements to the FDIC. *Id.* at 236. Before the president was convicted, the FDIC issued an *ex parte* order suspending him from his duties and prohibiting him from working for any FDIC-insured bank. *Id.* at 238. The bank president demanded a hearing and the FDIC granted him one, but he sued before it could occur. *Id.* at 238-39. The Court held that it was "undisputed" that the FDIC could not arbitrarily interfere with the employment of a regulated-bank's employee, but also that the action in this case was not arbitrary and that

the process that the FDIC had been prepared to give—a relatively prompt post-deprivation hearing—was sufficient. *Id.* at 240, 248.

But the Tenth Circuit has yet to extend this right beyond the circumstances encountered by the Supreme Court.[9] Three district courts in this circuit have recognized that arbitrary governmental interference with private employment can be a plausible claim based on a recognized constitutional theory.[10] That type of claim is certainly not

---

[9] Other circuit courts have extended the right against arbitrary governmental interference with private employment to circumstances beyond the Supreme Court's cases. *See, e.g.*, *Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 487, 491-92 (5th Cir. 2005) (state licensing regulators threatening to prosecute the clients of an unlicensed motorcycle-funeral-escort business); *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) (recognizing the general right); *Korb v. Lehman*, 919 F.2d 243, 248 (4th Cir. 1990) (same); *Chernin v. Lyng*, 874 F.2d 501, 502, 505-06 (8th Cir. 1989) (federal regulators refusing inspection services to a meat-packing company unless it terminated one of its employees); *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987) (state and federal government agents refusing funds to a nonprofit corporation unless it terminated a particular employee).

[10] In *Barrett v. Fields*, 924 F. Supp. 1063 (D. Kan. 1996), the district court recognized that the Supreme Court had established a right "to hold specific private employment and to follow a chosen profession free from unreasonable government interference," as protected by due process. *Id.* at 1073 (quoting *Greene*, 360 U.S. at 492). But the court rejected the claim on the case's specific facts. *Id.* at 1074. In *Fernandez v. Taos Municipal Schools Board of Education*, 403 F. Supp. 2d 1040, 1043 (D.N.M. 2005), the district court held that the plaintiff had stated a valid claim based on the government's arbitrary interference with his employment. The plaintiff, a bus driver, alleged that a school transportation director had threatened his employer with negative contract consequences if he allowed the driver to continue working. *Id.* at 1042. Finally, the district court in the instant case agreed with *Fernandez* that arbitrary interference with employment "is a recognized constitutional theory." *Coleman v. Utah State Charter Sch. Bd.*, No. 2:10–cv–1186–TC, 2012 WL 1914072, at *5 (D. Utah May 25, 2012).

18

foreclosed in this circuit,[11] but we have never explicitly recognized it. And the Supreme Court cases that established and developed the right against employment interference do not clearly establish its applicability to Coleman. None of the settings in those cases—regulation of business, defense contracting, and banking—concern education in our public and charter schools. To extend those cases to the charter-school setting would go too far, especially given the Supreme Court's admonition to avoid precisely that kind of expansive holding. *See al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). Even so, we acknowledge that the Supreme Court has established a right against arbitrary governmental interference with private employment and that it is a recognized constitutional theory through which claims can plausibly be brought. The right is heavily fact-dependent, though, and to overcome any claim of qualified immunity, a plaintiff would have to plead facts far more similar to Supreme Court precedent than those that Coleman has presented.

The specifics of the charter-school setting also argue against us stretching to establish a new right in this context. The government has a strong interest in the management of publicly-funded schools. Indeed, few government interests are so strong. The Schools Act vests the State Charter Board with power to review charter-school operations—an especially necessary power when school officials are as closely tied to

---

[11] The Tenth Circuit once denied a procedural-due-process claim of an employee because he served at will, but the court did not deal with this specific claim and so did not foreclose such claims. *Lenz v. Dewey*, 64 F.3d 547, 551 (10th Cir. 1995); *see Fernandez*, 403 F. Supp. 2d at 1043 n.1.

19

their own oversight boards as Coleman was to Monticello Academy's. Moreover, here, the Utah Board of Education and the Utah State Office of Education ratified the State Charter Board's decision. The State Charter Board's actions were not arbitrary. The district court, therefore, was correct to hold that the State Charter Board members were entitled to qualified immunity, and to disallow Coleman's proposed amended complaint.

## CONCLUSION

We affirm the district court's grants of summary judgment and its denial of Coleman's motion to amend the complaint.

Entered for the Court

Gregory A. Phillips
Circuit Judge